IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MELISSA GOINS, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| HORRY COUNTY GOVERNMENT, | ) |
| | ) |
|        Defendant. | ) |
| _____ | ) |

## COMPLAINT AND JURY DEMAND

The Plaintiff, Melissa Goins, by and through her attorneys, Bonnie Travaglio Hunt of Hunt

Law, L.L.C. hereby complains against the Defendant, Horry County Government, as follows:

## NATURE OF THE ACTION

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended

   (42 U.S.C. §2000e, *et seq*.). The jurisdiction of this Court is invoked to secure protection

   of and redress deprivation of rights guaranteed by federal law and state law which rights

   provide for injunctive and other relief for illegal discrimination in employment.

2. This action is brought pursuant to the Age Discrimination in Employment Act (ADEA) 29

   U.S.C. 626 for age discrimination and retaliation for having complained of age

   discrimination.

3. This action is brought pursuant to the laws of South Carolina.

## PARTIES

4. The Plaintiff is an individual who resided in the State of South Carolina at all times relevant

   to this action.

1

5.    At all relevant times to the allegation in this complaint, the Plaintiff was an employee of the Defendant as defined by State and Federal Law.

6.    On information and belief, Defendant is an entity conducting business and affecting commerce in the state of South Carolina properly within the jurisdiction of the Court.

7.    At all times, relevant to the allegations in this Complaint, the Defendant employed more than 20 persons in the State of South Carolina.

8.    At all times, relevant to the allegations in this Complaint, the Defendant operated a governmental agency in the State of South Carolina.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter presents a federal question.

10.   Jurisdiction of this cause arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Section 2000e-2(a) and Section 2000e-3(a), as amended by the Civil Rights Act of 1991 (CRA Section 91), 42 U.S.C. Section 1981A *et seq.* and the Age Discrimination in Employment Act of 1974 (ADEA), 29 U.S.C. Section 626 *et seq.*

11.   The Horry County is the proper venue for this action pursuant because this is the District and Division in which the Plaintiff resides and in which a substantial part of the events or omissions giving rise to the claims occurred.

## Procedural Prerequisites

12.   The Plaintiff filed her first charge of discrimination against the Defendant on November 28, 2022 with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination, age discrimination, hostile work environment, and retaliation.

2

13.    The Plaintiff's first charge of discrimination was filed on November 28, 2022 and set forth the following:

I.    *That I am a current employee of the Employer.  That I am a SQL Report Writer.*

II.    *That I filed a charge of discrimination with the EEOC in 2021.  That I received my right to sue in September of 2021.  That I believed that my situation would improve and decided to now file litigation. However, my employment situation further deteriorated.*

III.    *That I applied for a promotion and was denied that promotion on 6/22/2022.*

IV.    *That my employer hired a less qualified younger male for the position.  That I complained about not being promoted and informed my employer that it was age and sex discrimination.*

V.    *That on 11/18/2022 I was informed that my position was being phased out of existence and that I could choose a demotion or be terminated.*

VI.    *That I have not been provided training that others have been provided.*

VII.    *That I have had the terms and conditions of my employment changed in retaliation for my complaints regarding discrimination.  I have complained regarding the failure to be promoted.  If I had been properly promoted and not discriminated against, I would not be laid off from my employment in June 2023.*

VIII.    *That I was treated differently based on my sex and my previous complaints while employed.*

IX.    *That I reported the differential treatment and hostile work environment to Human Resources.*

X.    *That I have been discriminated against based on my sex in violation of Title VII and age in violation of the ADEA.*

XI.    *That I have been subjected to a hostile work environment based on my sex, hostile work environment based on my reports of a hostile work environment and subjected to a hostile work environment based on retaliation.*

XII.    *That I have been subjected to a retaliation based on my complaints in violation of Title VII and ADEA.*

XIII.

14.    The Plaintiff filed a second charge of discrimination on July 5, 2023, alleging Sex Discrimination, Age Discrimination, Hostile Work Environment and Retaliation.  The Charge set forth the following:

I.    *That I am a former employee of the Employer.  That I was a SQL Report Writer.*

II.    *That I filed a charge of discrimination with the EEOC in 2021.  That I received my right to sue in September of 2021.  That I believed that my situation would improve and decided to now file litigation. However, my employment situation further deteriorated.*

III.   That I filed a second charge of discrimination on November 28, 2022 alleging Sex and Age Discrimination, Retaliation and Hostile Work Environment.

IV.   This is my third charge of discrimination.

V.   When I was hired I was informed that I would hired for an IT/GIS-Assistant DBA(1) position. That I am qualified for the position and have experience in the field and should have been placed in the position as promised when hired.

VI.   The Employer has now posted that position. The Employer has refused to place me in that position in retaliation for this charge of discrimination. That a younger less qualified individual has been hired for the position

VII.   That I have now been laid off in retaliation for my complaints.

VIII.   That I was treated differently based on my sex and my previous complaints while employed.

IX.   That I reported the differential treatment and hostile work environment to Human Resources.

X.   That I have been discriminated against based on my sex in violation of Title VII and age in violation of the ADEA.

XI.   That I have been subjected to a hostile work environment based on my sex, hostile work environment based on my reports of a hostile work environment and subjected to a hostile work environment based on retaliation.

XII.   That I have been subjected to a retaliation based on my complaints in violation of Title VII and ADEA.

15.   On February 8, 2024, the EEOC transferred the Charge of Discrimination to the Norfolk local office.

16.   The Plaintiff's right to sue for her charge of discrimination was dated February 27, 2024 and March 5, 2024.

17.   DISMISSAL OF CHARGE

The EEOC has granted your request for a Right to Sue, and more than 180 have passed since the filing of this charge. The EEOC is terminating its processing of this charge.

NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you chose to file a lawsuit against he respondent(s) on this charge under federal law in federal or state court, your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.

18.    That fewer than ninety days have elapsed since the Plaintiff received the Right to Sue on the Plaintiff's charge of discrimination.

## **FACTUAL BACKGROUND**

19.    That the Plaintiff is a resident of the United States and at all relevant times the Plaintiff resided in South Carolina.

20.    That the Plaintiff is a Caucasian female over the age of forty.

21.    The Plaintiff was hired by the Defendant on September 24, 2012, to work on the Help Desk.

22.    The Plaintiff, while working at a bank was robbed and had severe anxiety as a result of this incident.  Justin Schools was aware of the incident and was aware that the Plaintiff did not work in the reception area due to this occurrence.

23.    In May 2019, the Plaintiff met with Ralph Rich and Tim Oliver and Justin Schools separately and together.  The Plaintiff was informed that she would receive training to be promoted to the Assistant SQL Database Administrator.  The Plaintiff began training with Ralph Rich.

24.    In October 2019, Linda Hunt was hired as the office manager.  Ms. Hunt had applied for the position of Support Analyst, Infrastructure & Regulation.  However, she was informed by Oliver that a male employee of Jay Mitchell was more qualified.  Mitchell was later terminated in November of 2019 for sexually harassing the Plaintiff.  Oliver hired another male in the position.  The Replacement also had a discipline record and did not have his drone certification.

25.    In November 2019, the Plaintiff filed a sexual harassment complaint, and another employee was terminated as a result of that complaint.

26.  On December 10, 2019, Ralph Rich was pulled into Justin Schools office and informed that the Plaintiff was being removed from her current position and that Rich would be placed in her office and her position. Schools further informed Rich that the Plaintiff would be moved to the reception area where the administrative assistant is.

27.  On December 11, 2019, the Plaintiff is being given other duty assignments to the public safety team. These actions were in direct retaliation for her complaints regarding Sexual Harassment.

28.  On December 11, 2019, the Plaintiff is brought into Justin Schools office. The Plaintiff questioned Schools regarding the new assignments being given by Mike Clark and not Schools. The Plaintiff was informed that she would be doing whatever is asked of her as "other duties as assigned." The Plaintiff requested what this meant and was informed that she would do whatever she is told to do.

29.  On January 7, 2020, the Plaintiff asks Schools why she is hearing from co-workers that she is being moved to the reception area. Schools informed the Plaintiff that it was Tim Oliver's decision and she needed to discuss it with him. The Plaintiff then went to Tim Oliver and explained that as previously stated the reception area would cause anxiety. Oliver informed the Plaintiff that there is no other place to put her so she will have to work in that area. The Plaintiff requested to share an office with Rich or to be moved to the GIS room. Oliver informed the Plaintiff that she could not be moved to the GIS room because she did not feel comfortable there. The Plaintiff responded with you mean when the guys were throwing balls at my head and I complained. Oliver informed the Plaintiff that if she did not want to move to the reception area due to her anxiety she needed to get a note from her physician and request an accommodation.

30.  On January 15, 2020, the Plaintiff properly filed the paperwork to request an accommodation not to be moved to the front area where the reception area was located due to her anxiety.  Human Resources approved the accommodation request and informed the Plaintiff that being moved to the reception area is not part of her current job description and she did not understand why it was occurring.  The Plaintiff informed HR that she felt that the action of moving her to the reception area was in retaliation for her sexual harassment complaint.  HR's response was let's not go there yet and figure this out first.

31.  On the same day the Plaintiff is informed that other employees heard Schools on the phone with HR and Schools being upset that the Plaintiff felt the actions were in retaliation for her sexual harassment complaint.

32.  In early February 2020, the Plaintiff was informed that she needed to immediately move out of her office into the GIS room.  The Plaintiff was required to leave her office, but no one was placed in her office and the office remained empty for a year.

33.  In May of 2020, employees in the Plaintiff's office are grouped into teams and required to attend mandatory meetings.  The Plaintiff is informed that she is no longer part of the Public Safety Team and is required to attend with the Administration Team.   Other male employees were not required to attend the meetings.

34.  In August of 2020, Michael Clark begins to make statements in the office specifically to the security group that management is having problems with the Plaintiff.

35.  In August of 2020, The Public Safety Manager retired.  Michael Clark is placed in the position.  Clark is unable to create report/queries which the Plaintiff was required to perform.

36.     In August of 2020, Corey Shamy begins to inform employees that he is going to be promoted.

37.     On September 2, 2020, in a Public Safety meeting, the Plaintiff is informed that she needs to send a list of reports that she is working on to Schools.  The Plaintiff asked why she was required to go to the public safety meetings if she was no longer part of the Public Safety Support Group.  Schools had no response for the Plaintiff.

38.     On September 26, 2020, an internal job positing for the position of Assistant Project Manager was posted.  The Posting stated that the position applications would be open from September 21 to September 23, 2020.   The internal post occurred after the open applications window.  Corely Shamy was given the position.  Shamy began working for the county as an intern in March of 2020, graduated in May of 2020 and hired as an employee.  Shamy made more money than the plaintiff.  The Plaintiff has been required to assist Shamy on his job duties on several occasions due to the fact that he has no ide how to perform the tasks.  Shamy is required to write SSRS and Crystal Reports and could not perform this task.  At the time the Plaintiff was fluent in drafting these types of reports.

39.     After Corey Shamy was hired for the position, he was required to take over the Public Safety PMDC Reports as the new public safety person.  However, Justin stated that the Plaintiff could do them.  The Plaintiff was not promoted to the position of assistant program manager because Shamy was supposedly to have more experience but the Plaintiff was required to perform part of his position.

40.     As a result of these two males being promoted Clark and Shamy, the Plaintiff's job duties increased significantly due to the fact that neither of them can perform all requirements of

their positions.  Prior to their promotions, Lisa Ward the former project manager performed these actions.

41.    On November 9, 2020, the Plaintiff was required to create a report for 911.  The Plaintiff completed the task.  Schools requested on two different occasions if the Plaintiff had completed the task for Clark.  Both times the plaintiff informed Schools it was completed.

42.    On December 9, 2020, Clark calls the Plaintiff at 8:30 am, sends a teams meeting message, left a voicemail and text message requesting assistance with a report that Oliver had requested he complete.  Clark had no idea how to complete the report.  The Plaintiff completed the report and provided it to Clark.  Clark presented the report to Oliver as his own.

43.    On December 14, 2020, Clark instructs the Plaintiff to reach out to his departments and determine what reports are needed.

44.    On December 15, 2020, the Plaintiff contacted Schools and asked if the job of communicating with Clark's departments was part of Ward's job and why is it part of the Plaintiff's duties and responsibilities considering it not related to creating, modifying and designing SQL reports.  Schools response was that Clark is down a person and she needed help.  As a result of the instruction, the Plaintiff inquired why this instruction came from Clark and not Schools, and why she was not being considered for a promotion or a raise when her workload had increased as a result of these two individuals being promoted.  In response, Schools informed the Plaintiff that she was just helping out.  The Plaintiff further asked why there had been nothing else said about her being promoted to the SQL Database Administrator.  Schools informed the Plaintiff that she was not going to be promoted.  The Plaintiff asked where Schools saw her future.  Schools informed the Plaintiff that she was

good at what she did and she would be staying there. The Plaintiff again asked about a pay raise.  Schools informed her that no one is receiving pay raises they are just promoted people.

45.    The Plaintiff addressed her concerns as to why she was required to SQL and SSRS reports when these are requirements of the project manager position and assistant manager position but Clark had no idea how to do them so the duty fell to her but she is not going to be promoted and not receive a pay raise.

46.    Schools response was that the Plaintiff would only be required to help out temporarily. Schools further informed that no one is getting pay raises.  The statement is untrue as a male co-worker received a pay raise in October of 2020.

47.    On December 21st, the Plaintiff informed Schools that she felt that she was being discriminated and retaliated against.

48.    On December 21st, the Plaintiff further requested that she be placed near Mr. Rich so that she could receive further training regarding SQL database.

49.    On December 21st, the Plaintiff informed Schools that there was a position in Myrtle Beach with the same job duties she was performing with a starting salary of $80,000.00 and she was currently only making $58,500.00.  The Plaintiff informed Schools that she was being discriminated against based on her pay as considering the salary that others were making in their department.

50.    The Plaintiff further informed Schools that she was qualified for all the promotions she had applied for but males were being hired.  In fact Tim Oliver informed the Plaintiff that they needed males for certain positions.

51.   On January 5, 2021, Schools informed the Plaintiff that he submitted paperwork for her to get a pay increase to $80,000.00 which HR denied.

52.   The Plaintiff requested to be raised to $70,000.00.  HR also denied this request and stated that it was not justified.

53.   On January 12, 2021, Schools informed the employees in a meeting that there was a budge retreat the week before and that there will be no new positions but that they had hired a new public safety support person that had applied months ago.

54.   On January 15, 2021, the County Website has a job posting for a job which entails all of the Plaintiff's job responsibilities.

55.   On February 2, 2021, Schools informed Rich that they needed to have meetings every other week because a female had complained that he is not required to attend meetings.  Schools informed others that he needed to dot his I's and cross his T's now.

56.   On February 5, 2021, Schools informed the employees that their hours of operation was 8 to 5 pm and this is their second notice.

57.   Throughout the Plaintiff's employment her hours have been flexible due to being a single mother.  The Plaintiff was permitted to work hours that were convenient as long as it was 40 hours.

58.   Due to the change issued on February 5, 2021, the Plaintiff requested if this applied to her and was informed that her work hours were 8 am to 5 pm.  However, Clark and Bentley were allowed to work 7 am to 4 pm, which is the hours the Plaintiff had been working but was no longer allowed to work.

59.    On February 8, 2021, the Plaintiff called Katie Badgett in Human Resources and informed her that she felt that she was being retaliated against, subjected to sex discrimination and subjected to a hostile work environment.

60.    On February 9, 2021, the Plaintiff met with Katie Baget and informed her of all the issues regarding sex discrimination, hostile work environment and retaliation.

61.    Katie Badgett informed the Plaintiff that Schools and Oliver were being unethical.

62.    The Plaintiff further requested information regarding why she had not received a pay raise in December 2020.  Badgett informed the Plaintiff that Schools had stated that you had another job offer.  The Plaintiff informed Badgett that was a lie.  The Plaintiff asked how did another employee receive a pay raise.  Badgett informed the Plaintiff that Schools informed HR that the employee had received a new certification.  Schools lied to Human Resources as the employee had informed the Plaintiff that he was shocked by the raise as he had not requested it or received any new certifications.

63.    After this meeting the Plaintiff requested information and updates from Badgett on several occasions.  There was no response.

64.    After several weeks, in March of 2021, Badgett informed the Plaintiff that she would be interviewed for the OnBase Position.

65.    On May 20, 2021, the Defendant removed the plaintiff's duty of backing up Ralp Rich and gave these duties and responsibilities to 2 other individuals.

66.    On May 20, 2021 the Plaintiff was removed from the Public Safety Group.  The Plaintiff was removed from the email group which she had been a member of since 2013.

67.    In 2021, the Plaintiff and two other females applied for an Onbase position.

68. The Plaintiff properly applied for the OnBase position. The Plaintiff was qualified for the position.

69. The week of June 17, 2021, the Plaintiff and others are interviewed for the position.

70. However, prior to the interviews, Tim Oliver had already offered the position to Tim Coon which he accepted. The action of conducting the interviews was an exercise in futility as the Defendant had already hired the individual who would be taking the position.

71. Oliver had informed the supervisor over OnBase the week before the Plaintiff's interview that he had hired Tim Coon in Ohio to work remotely and perform the position but he had to go ahead and interview.

72. While scheduling the interviews, after already giving the position to Tim Coon, Tim Oliver sent an invitation to Jackie Smith to attend the interviews. Another employee overheard a conversation between Tim Oliver and Jackie Smith where Jackie Smith informed Oliver that she was surprised to have received an invitation to the interviews and then as a follow up she stated, "oh so we can prove we are interviewing females for the positions." Oliver responded yes to this statement.

73. Tim Oliver took the opportunity of interviewing the females as a way to interrogate the women creating a hostile work environment for the Plaintiff and other females.

74. The Plaintiff was quested regarding her hours and if this would be a problem on several occasions due to her being a single mother and having custody of her child.

75. The Plaintiff had hoped that by HR being present in the interviews that the females would finally get a fair chance. However, Tim Oliver had already hired a male, so the interviews were merely a pretext.

76.    At no other time during her employment had the Plaintiff seen HR participate in an internal interview.

77.    In June of 2021, the Plaintiff contacted the South Carolina Human Affairs Commission but due to a fear of retaliation did not follow through with the right to sue.

78.    The position of Public Safety Assistant Project Manager came open in June of 2022 again. The Plaintiff applied for the position.  The Plaintiff was not hired for the position.  Bryce Larson was hired.  The position description was changed twice during the hiring process to fit the male who was hired for the position.  The change in the job description and requirements were specifically fit Larson's CV.

79.    On June 10, 2022, Oliver announced that Corey Shamy would be leaving and that there would be a new posting for the Assistant Project Manager position.

80.    Oliver requested applications be submitted to him prior to June 16th at 5:00 pm.

81.    The Plaintiff applied for a promotion to the Assistant Project Manager position.

82.    On June 24, 2022, the Plaintiff was denied the promotion.

83.    On June 30, 2022, the Plaintiff sent an email to Katie Badgett with Human Resources stating that that she was being retaliated against and subjected to a hostile work environment in retaliation for her previous complaints about being treated differently based on her sex and a single mother, not being promoted and not receiving pay increases.

84.    On August 2, 2022, Oliver announced that the IT/GIS department would be releasing a new workflow.

85.    On November 18, 2022, the Plaintiff was called and informed that she had a choice to make she could either accept a demotion or be terminated.

86.    On the Plaintiff's last day the Defendant instructed her to train 3 people in the office on how to draft the reports that she wrote for the Defendant.

87.    The Plaintiff was informed that she was being terminated becasu ethe Defendant had purchased new software that could do her job.

88.    On November 18, 2022, the Plaintiff received her termination letter that her position would end June 30, 2023.

89.    In January 2023, the Plaintiff was required to perform functions of Clark and Bryce's position because they were just too busy.  The Plaintiff was instructed by Schools to call Motorola and discuss redesigning their reports.  The Plaintiff did as instructed and was informed by Motorola this is why it is so important to have a SQL writer.  The Plaintiff's contact person at Motorola informed the Plaintiff that she left the county because of Oliver and sex discrimination and him blackballing her.

90.    In April of 2023, the Defendant changed employees access to emails.

91.    In June 2023, the Defendant was to have a new position that would be performing the responsibilities of the Plaintiff on July 1, 2023.

92.    The Plaintiff's termination took place on June 30, 2023.

93.    The Defendant posted the new position on July 1, 2023, for the new fiscal year 2024.  It was an assistant DBA with a salary of $127,442.00 that had the same position requirements of the Plaintiff.

94.    Since the Plaintiff's termination the Defendant has had a vender come into to train employees on the Plaintiff's position and drafting reports.

95. The software that can perform the report writing does not exist. Therefore, the reasons for terminating the Plaintiff are pretextual for her complaints regarding discrimination, harassment, sexual discrimination and hostile work environment.

96. In September 20, 2023 the Defendant still had the Plaintiff's out of office on her email. As several individuals called the Plaintiff to assist with writing reports but she was not responding to the emails.

97. That the Defendant failed and refused to protect the Plaintiff from a hostile work situation.

98. The Defendant specifically changed the Plaintiff's working group so she would not obtain experience.

99. The Defendant intentionally changed the Plaintiff's duties and responsibilities to affect the terms and conditions of her employment.

100. If the Plaintiff had been promoted she would not have been laid off.

101. The lowest paid employees in IT/GIS where the Plaintiff worked are the male employee with a disability and all females.

102. Each reason given to the Plaintiff for her termination was pretextual and did not actually exist.

103. On several occasions the Plaintiff requested training and was denied. However, Oliver allowed others to train regularly.

104. That based on the Defendant's actions the Plaintiff has suffered lost wages and lost benefits.

105. That the Plaintiff was discriminated against based on her sex, age, retaliation, and retaliatory hostile work environment.

106. During the Plaintiff's employment, the Plaintiff suffered discrimination based on her age, sex, and retaliation for her complaints.

107. That each of the reasons provided by the Defendant for not fixing the Plaintiff's work environment was meant to harass the Plaintiff, harm the Plaintiff and retaliate against the Plaintiff.

108. That Defendant wrongfully discriminated against the Plaintiff in violation of Title VII 42 U.S.C. 2000, and the Age Discrimination in Employment Act.

109. That each of the reasons presented by the Defendant was pretextual.

110. Defendant's actions described herein were intentional and inflicted upon Plaintiff severe mental and emotional distress.

111. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

112. The Defendant was well aware of Tim Oliver's propensity to discriminate against females. Specifically, Oliver hired women at a lower rate of pay than all male employees and failed and refused to promote the Plaintiff to any position.

113. That the Defendant is the direct and proximate cause of injury to the Plaintiff.

114. That the Plaintiff was issued certain policies and procedures by the Defendant.

115. The Defendants violated the policies and procedures by failing to follow the actual policies in place against discrimination, hostile work environment and retaliation.

116. That as a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and

suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

117.    Defendant engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of her perceived Age, and Sex.

118.    That the Defendant, treated the Plaintiff significantly differently based on her age, and Sex.

119.    That the Plaintiff treated the individuals not in the Plaintiff's protective category more favorably.

120.    That the Defendant's actions towards the Plaintiff violated the law.

121.    That the Defendant is the direct and proximate cause of damage to the Plaintiff.

122.    That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's age, and sex, the Plaintiff:

    a.    suffered severe emotional distress;

    b.    suffered future lost wages and future lost benefits;

    c.    suffered economic damages;

    d.    Loss of employment;

    e.    Loss of Future employment;

    f.    incurred attorney fees for this action;

    g.    incurred costs of this action; and

    h.    will incur future attorney fees and costs.

123.    That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

124.    That the Defendant evaluated the plaintiff differently based on her complaints, Sex Discrimination and Age Discrimination complaints.

125.    That the Defendant, failed and refused to pay the Plaintiff equally, failed and refused to discipline male persons the same.  That the Defendant, gave more favorable treatment, assignments and positions to the male employees.

126.    That the Defendant is the proximate and direct cause of damage to the Plaintiff.

127.    Plaintiff seek all back pay and fringe benefits to which she is entitled under 29 U.S.C. Section 626(b), as well future damages and liquidated damages under the act.

128.    Pursuant to 42 U.S.C. Section 1988(c) and 42 U.S.C. Section 2000e-5(k), Plaintiff seeks her attorney's fees in bringing this action, including expert witness fees, and further seeks her costs associated with bringing this action pursuant to 28 U.S.C. 1920 of the Federal Rules of Civil Procedure, along with prejudgment and post-judgment interest pursuant to the law.

**FOR A FIRST CAUSE OF ACTION
AGE DISCRIMINATION IN VIOLATION OF THE
AGE DISCRIMINATION IN EMPLOYMENT ACT**

129.    That paragraphs one through one hundred twenty eight (128) are hereby incorporated verbatim.

130.    That the Plaintiff was subjected Age Discrimination while employed with the Defendant.

131.    That the Defendant, treated the Plaintiff significantly differently based on her age.  That younger individuals were promoted, not terminated, not disciplined and given more favorable treatment.

132.    That the Defendant, treated the Plaintiff significantly different than it treated younger employees.  That the Defendant did not discipline younger employees for actions that

would have been terminable offesnses. That the Defendant treated younger employees more favorably with better assignments, promotions, training, better evaluations and no discipline.

133. The Defendant threatened changed the terms and conditions of the Plaintiff's employment and failed and refused to promote her several positions during her employment because of her age.

134. That the Defendant's actions towards the Plaintiff violated the law.

135. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

136. That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's age, the Plaintiff:

    a.    suffered severe emotional distress;

    b.    suffered future lost wages and future lost benefits;

    c.    suffered economic damages;

    d.    Loss of employment;

    e.    Loss of Future employment;

    f.    incurred attorney fees for this action;

    g.    incurred costs of this action; and

    h.    will incur future attorney fees and costs.

137. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

## FOR A SECOND CAUSE OF ACTION

## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

138.    That Paragraphs one (1) through and thirty-seven (137) are hereby incorporated verbatim.

139.    That the Plaintiff was treated differently based on her sex.  The Defendant failed and refused to promote her or hire her for positions because of her sex.

140.    That the Plaintiff applied for several positions during her employment that would have promoted her to a better positions and a salary that she would not have been laid off.

141.    That the Plaintiff was not promoted due to her sex.

142.    That the Defendant allowed the Plaintiff to be discriminated against based on her sex in violation of their own policies and procedures.

143.    That the Plaintiff reported the discrimination.  That the Defendant failed and refused to correct the behavior.  That the behavior became worse after the Plaintiff's reports.

144.    That the Defendant allowed the Plaintiff's supervisor to treat individuals not in the Plaintiff's protected class more favorably without repercussions.

145.    That the Defendants discriminated against the plaintiff based on sex.

146.    That the Defendants took adverse employment action against the Plaintiff by:

(a)    Failing to protect the Plaintiff from a Hostile work environment;

(b)    Failing to return the Plaintiff to work;

(c)    Disciplining the Plaintiff for pretextual reasons; and

(b)    Refusing to enforce its own policies concerning discipline of employees engaging in harassing comments.

147.    That the Defendants subjected the Plaintiff to discrimination in violation of the law.

148.    That, as a direct and proximate result of the Defendants' intentional, unlawful and retaliatory actions, the Plaintiff:

        (a)     Suffered severe emotional distress;

        (b)     Suffered lost wages and benefits;

        (c)     Suffered future lost wages and benefits;

        (d)     Incurred attorney's fees and costs of this action.

149.    That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees, costs of this action, and other damages such as this Honorable Court deems appropriate and just.

**FOR A THIRD CAUSE OF ACTION**

**RETALIATION FOR COMPLAINTS REGARDING SEX DISCRIMINATION, RETALIATION AND HOSTILE WORK ENVIRONMENT COMPLAINTS**

150.    That Paragraphs one (1) through one hundred and forty-nine (149) are hereby incorporated verbatim.

151.    That the Plaintiff was an employee according to the law of the State of South Carolina, Federal Law including but not limited to Title VII.

152.    That the Plaintiff has filed made complaints regarding Sex discrimination to Human Resources.  As a result of those complaints the Plaintiff terms and conditions of her employment were changed, failed to be promoted, harassed, subjected to a retaliatory hostile work environment and terminated.

153.    As a result of those complaints the plaintiff has been treated differently and subjected to retaliation.

154. That the Defendant retaliated against the Plaintiff by placing her in the most hostile work environment, terminating her, failing to promote her, subjecting her to changes in the terms and conditions of her employment, and failing to protect her from further discrimination.

155. That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of her complaints.

156. That the Plaintiff was considered an exemplary employee by many of her supervisors until her complaints.

157. As a result of the Plaintiff's complaints regarding discrimination based on her sex, retaliation and hostile work environment based on her previous complaints the Defendant retaliated against the Plaintiff.

158. The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

159. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

160. That the Defendant is the direct and proximate cause of injury to the Plaintiff.

161. That the Plaintiff is entitled to an award of damages from the Defendant. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII.

## **FOR A FOURTH CAUSE OF ACTION**

## **HOSTILE WORK ENVIRONMENT**

162.    That Paragraphs one (1) through one hundred and sixty-one (161) are hereby incorporated verbatim.

163.    That the Plaintiff was an employee of the Defendants.

164.    That the Defendants are employers in accordance with Title VII.

165.    That the Defendants subjected the Plaintiff to a hostile work environment.

166.    That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

167.    The Plaintiff was subjected to discrimination based on her Sex, and Age.

168.    That the Defendant failed and refused to address the situation.

169.    That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's Sex, and Age.

170.    That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

171.    That the Plaintiff has been damaged as a result of the Defendant work environment.

172.    That the Defendant is the direct and proximate cause of damage to the Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE the plaintiff prays that this Honorable Court:

A.  Accept jurisdiction over this matter, including the pendent claim;

B.  Empanel a jury to hear and decide all questions of fact;

C.  Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D.  Award to plaintiff compensatory and consequential damages against the defendant;

E.  Award to plaintiff punitive damages against the defendant for their malicious and spiteful pattern of sexual discrimination;

F.   Award to plaintiff All damages available to the plaintiff damages against the defendant for their malicious discrimination against the plaintiff in violation of the Title VII, and ADEA;

G.   Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

H.   Award all damages available to the Plaintiff pursuant to Federal and State Law;

I.   Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in sexual discrimination, disparate treatment or retaliation against plaintiff and

J.   enter any other order the interests of justice and equity require.

HUNT LAW LLC

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
HUNT LAW LLC
4000 Faber Place Drive, Suite 300
North Charleston SC 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709


Dated:  May 1, 2024